# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

BRIAN MORLANTHUS CLAY,                                               PLAINTIFF
ADC #119898

V.                          5:16-CV-00160-SWW-JTR

CORRECT CARE SOLUTIONS, LLC;
AMY L. ROWLAND; ARIC WADE SIMMONS;
BRETT BUTLER; and TAMMY LYNE KIMBLE          DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright.  Any party may file written objections to this Recommendation.  Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Brian Morlanthus Clay ("Clay") is a type 2 diabetic who takes insulin injections to control his blood sugar levels. He has filed this *pro se* § 1983 action alleging that, while he was confined in the Arkansas Department of Correction ("ADC"), Defendants Correct Care Solutions, LLC ("CCS"), Dr. Brett Butler ("Dr. Butler"), Advance Practice Nurse Aric Wade Simmons ("APRN Simmons"); Health Services Administrator Amy Rowland ("HSA Rowland"), and Director of Nursing Don Kimble ("Nursing Director Kimble") violated his constitutional rights by failing to provide him with adequate medical care for diabetes and neuropathy. *Doc. 2.* Clay seeks $50,000 in compensatory damages and $25,000 in punitive damages against each Defendant.[1]  *Id.*

Defendants have filed a Motion for Summary Judgment on the merits of Clay's inadequate medical care claim, a Brief in Support, and a Statement of Undisputed Facts. *Docs. 74, 75, & 76.* Clay has filed a Declaration in Opposition to Defendants' Motion for Summary Judgment, a Response, a Brief in Support, a Response to Statement of Facts, and a Statement of Facts. *Docs. 91, 92, 93, 94 & 95.*

---

[1] The Court previously ruled that Clay could proceed only with the specific inadequate care claims he raised against these Defendants in ten properly exhausted grievances, all of which were filed in 2015. *Doc. 56 & 60.*

Before addressing the merits of the Motion for Summary Judgment, the Court will summarize the relevant undisputed facts giving rise to Clay's inadequate medical care claim:[2]

1.      In February of 2015, Clay was transferred from the Tucker Maximum Security Unit to the East Arkansas Regional unit.  (Doc. 2, ¶ 18).

2.      On February 17, 2015, Dr. Butler changed Clay's insulin from Humalog R to Humulin R.  Dr. Butler made this change despite Clay informing him that he believed he had experienced "adverse effects" from Humulin R in the past, which allegedly led another doctor to change his insulin from Humulin R to Humalog R.   (*Doc. 2*, ¶ 19).

3.      While Clay believes that he is allergic to Humulin R, he acknowledges that no doctor has ever diagnosed him as having an allergy to Humulin R.  (Clay depo., *Doc. 76-2*, Exh. B, at 22-23)

4.      Clay testified in his deposition that, if he takes Humulin R, he experiences side effects "[w]ithin a month's time" which include coughing, asthma,

---

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial.  *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

and loss of appetite. (Clay Depo., *Doc. 76-2*, Exh. B at 3-6). No medical evidence supports Clay's subjective belief that these "side effects" are caused by taking Humulin R.

5. Because of his belief that he is allergic to Humulin R, Clay refused to take the Humulin R that Dr. Butler prescribed in February of 2015. (Clay depo., *Doc. 76-2*, Exh. B, at 23).

6. On April 2, 2015, Dr. Butler changed Clay's insulin from Humulin R to Novolin R to "pacify" Clay and stop his complaints that he believed he was allergic to Humulin R. Dr. Butler did *not* believe it was medically necessary to make this change in Clay's insulin; nor did he believe Clay was allergic to Humulin R. When he prescribed Novolin-R for Clay, Dr. Butler was unaware there would be future issues keeping it in stock. (Med. Records, *Doc. 76-1*, Exh. A at 4; Butler Decl., *Doc. 76-4*, Exh. D at 2; Clay Depo., *Doc. 76-2*, Exh. B at 23).

7. On April 24, 2015, Dr. Butler wrote an order, at Clay's request, changing the timing of Clay's neurontin medication to a morning dose.[3] Clay complained that the four days it took Dr. Butler to respond to Clay's written request was too long. (*Doc. 34*, Exh. A at 30-32).

---

[3] Neurontin is a medication used to treat nerve (or neuropathic) pain, which afflicts a large number of insulin dependent diabetics. *See* https://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/symptoms-causes/syc-20371580; and https://www.drugs.com/neurontin.html.

8. On July 27, 2015, Clay was treated by APRN Simmons. During his appointment, Clay requested APRN Simmons to change his insulin regimen to three shots a day. After evaluating Clay's condition, APRN Simmons made the medical decision to keep Clay on a regimen of two insulin shots per day. (Simmons Decl., *Doc. 76-5*, Exh. E at 1-2).

9. On a number of dates between September 11 and October 22 of 2015, Novolin R was unavailable when Clay appeared for pill call. However, on all of those dates, Humulin R was available and it was offered to Clay in lieu of Novolin R.[4] Clay consistently refused to take Humulin R in place of Novolin R. (Clay depo., *Doc. 76-2*, Exh. B, at 19; Kimble decl., *Doc. 76-3*, Exh. C at 1).

10. In addition to offering Clay Humulin R when Novolin R was unavailable, CCS's Nursing Director Kimble *continuously* tried to explain to Clay

---

[4] The medical records document that Novolin R was unavailable when Clay appeared for pill call on the following dates in 2015: August 3; September 5, 7, 10, 11, 20; and October 6, 20. *See* Medical History, *Doc. 76-1*, Exh. A, at 9-13.

Clay contends that Novolin was unavailable to him continuously from September 11 through October 22. However, Clay's inmate medical history shows that on multiple occasions between September 11 and October 22. Clay often failed to show up for pill call to receive his insulin. By failing to appear for pill call on those dates, Clay is in not in a position to know if Novolin was available or not.

In any event, it is undisputed that Humulin R was *always available* to Clay on all of those dates. Thus, the factual dispute about the number of days Novolin R may not have been available to Clay is not material to the disposition of Clay's claims. (Clay Depo., *Doc. 76*, Exh. 2 at 19).

that Novolin R and Humulin R were interchangeable.[5]  (Kimble Decl., *Doc. 76-3*, Exh. C at 1; Simmons Decl., *Doc. 76-5*, Exh. E at 3; Clay Depo., Doc. 76-2, Exh. B at 21).

11.   Despite the ongoing educational efforts of Nursing Director Kimble, and other members of CCS's medical staff, Clay refused to receive the offered injections of Humulin R to treat his diabetes.  Clay also skipped meals in an effort to manage his blood sugars.  (Kimble Decl., *Doc. 76-3*, Exh. C at 1-2; Clay depo., *Doc. 76-2*, Exh. B, at 14, 23).

12.   APRN Simmons observed numerous dates when it appeared, based on Clay's low blood sugar readings, that he had skipped meals or snacks.  In his opinion, Clay's refusal to take insulin as prescribed, coupled with skipping meals, contributed to his hypoglycemia and the increase in his A1c readings.  Clay's refusal to comply with the advice of CCS medical professionals greatly complicated their efforts to manage and control his diabetes.  (Simmons Decl., *Doc. 76-5*, Exh. E at 4-5).

13.   On October 22, 2015, Dr. Butler changed Clay's prescription from Novolin R to Humulin 70/30.  Dr. Butler made this change because he felt that

---

[5] Novolin R and Humulin R are brand names for the same diabetes drug - regular human insulin, short-acting. *See, e.g.,* https://www.mayoclinic.org/drugs-supplements/insulin-human-regular-injection-route/description/drg-20060927*;* and https://reference.medscape.com/drug/humulin-r-novolin-r-insulin-regular-human-999007.

Clay's diabetes could be better controlled with the 70/30 mix of 70% insulin isophane suspension (NPH), a longer acting insulin, and 30% regular insulin, a shorter acting insulin. (Butler Decl., *Doc. 76-4*, Exh. D at 2; Clay Depo., *Doc. 76-2*, Exh. B at 13).

14  Humulin R is the 30% regular insulin in Humulin 70/30. Clay took the Humulin 70/30 that Dr. Butler prescribed, and he experienced no adverse effect from doing so. (Butler Decl., *Doc. 76-4*, Exh. D at 2; Clay Depo., *Doc. 76-2*, Exh. B at 13).

15.  According to Dr. Butler, if Clay had a "true allergy" to Humulin R, it would have caused side effects or an allergic reaction after he began taking the insulin mix containing Humulin R. (Butler Decl., *Doc. 76-4*, Exh. D at 2).

16.  On December 15, 2015, APRN Simmons treated Clay for a referral for "severe wheezing and coughing at night." Because those symptoms were not related to Clay's diabetes, APRN Simmons did not address any diabetes related issue with Clay. (*Doc. 34*, Exh. A at 73-76; Simmons Decl., *Doc. 76-5*, Exh. E at 4-5).

17.  Hemoglobin A1c ("A1c") is a weighted average of glucose levels during the preceding few months (usually three). It provides a measurement of how well a patient's diabetes is under control. Clay's A1c was 10.2 when he transferred to EARU in February of 2015. Over the next few months, his A1c readings were:

>       May – 12.2
>       June – 11.2
>       July – 10.9
>       September – 10.7
>       November – 10.6
>       December – 10.6

(Medical Records, *Doc. 76-1*, Exh. 1 at 31-37; Dr. Stieve Decl., *Doc. 76-6*, Exh. F at 2-3).

    18.    Clay alleges that cost was a factor in the Defendants' decision on what drugs to give him to treat his diabetes. However, he has submitted no substantive evidence to support this entirely speculative allegation.

    19.    In the opinion of Dr. Jeffrey Stieve ("Dr. Stieve"), a licensed physician and the Regional Medical Director for CCS, no medical evidence exists that Clay is allergic to Humulin R. Novolin R and Humulin R are different brand names for the *same diabetes drug*.[6] Because Clay was able to take, without incident, both Novolin R, an insulin interchangeable with Humulin R, *and* Humulin 70/30, which contains Humulin R, it is Dr. Stieve's medical judgment that Clay is not allergic to Humulin. Additionally, it is Dr. Stieve's medical opinion that Humulin R was not the cause of the side effects of asthma or loss of appetite that Clay attributed to taking that medication. (Dr. Stieve Decl., *Doc. 76-6*, Exh. F at 3).

---

[6] *See* footnote 5, *supra* at p. 6.

20. In the medical opinion of Dr. Stieve: (1) Dr. Butler and APRN worked hard to regulate Clay's diabetic condition and made routine adjustments as deemed medically necessary; (2) Dr. Butler and APRN Simmons exercised proper medical judgments in attempting to control Clay's diabetes with long acting insulin and two shots daily of short acting insulin; (3) there was nothing inadequate or improper about their medical treatment of Clay's diabetes; (4) it was medically appropriate to offer Clay Humulin R as a substitute for Novolin R; and (5) it was medically appropriate for Dr. Butler to prescribe Humulin 70/30 in response to Clay's persistent refusal to take Humulin R. (Dr. Stieve Decl., *Doc. 76-6*, Exh. F at 2-3).

## II. Discussion

Defendants argue that they are entitled to summary judgment on all of the inadequate medical care claims Clay has asserted against them. The Court agrees.

To proceed to trial on his inadequate medical care claim, Clay must have evidence demonstrating that: (1) he had an objectively serious medical need for treatment of diabetes; and (2) Defendants subjectively knew of, but were deliberately indifferent to, that serious medical need. *See Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).

The parties *agree* that Clay had an objectively serious medical need arising

from his diabetes. Thus, the only issue is whether there is evidence that Defendants were deliberately indifferent to that serious medical need.

The Eighth Circuit has explained that deliberate indifference "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998). Additionally, it is well settled that a physician's or nurse's negligence or even gross negligence in making treatment decisions are insufficient to establish a constitutional violation. *Langford v. Norris*; 614 F.3d 445, 460 (8th Cir. 2010); *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). *Likewise, a prisoner's disagreement with a medical provider's treatment decisions does not rise to the level of a constitutional violation. Id.*

Defendants have submitted: (1) medical records; (2) declarations from Dr. Butler, APRN Simmons, and Nursing Director Kimble documenting their ongoing efforts to care for Clay's diabetes; and (3) a declaration from a non-treating physician that the medical care and treatment provided to Clay was medically appropriate.

Clay's allegations in support of his claims amount to nothing more than his personal disagreement with the medical judgment of the Defendants who treated his

type 2 diabetes.[7]  For example, he argues that Defendants failed to "individualize" his diabetes care, refused him the three daily doses of insulin he needed, and prescribed Humulin R without adequately investigating his complaints that he had an adverse reaction to it.

These allegations, unaccompanied by any medical proof, are not sufficient to create a fact question on deliberate indifference.  *Dulany v. Carnahan*, 132 F.3d 1234,1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment");  s*ee also Reid v. Griffin*, 808 F.3d 1191, 1193 (8th Cir. 2015) (explaining that an "inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"); *Meuir v. Greene Cnty. Jail Emply.*, 487 F.3d 1115, 1118 (2007) (explaining that a prisoner's mere disagreement with matters of expert medical judgment or the course of medical care is insufficient to sustain a claim of deliberate indifference).  Further, mere

---

[7] Many of Clay's claims hinge on his underlying contention that he was allergic to Humulin R.  However, Clay has not presented *any evidence*, other than his *unsubstantiated personal opinion*, of an allergy to Humulin R.  He claims that ingesting Humulin R causes him to suffer side effects such as coughing, asthma, and loss of appetite, which arose approximately one month after he took the medication.  Clay's speculation about what caused those conditions is not medically objective evidence sufficient to create a factual dispute on that issue.  Nor is it sufficient to counter Dr. Stieve's independent medical opinion that no medical evidence exists that Clay is allergic to Humulin R, or that those alleged "side effects" resulted from Clay taking Humulin R.  (Dr. Stieve Decl., *Doc. 76-6*, Exh. F at 3).

negligence or even gross negligence is not enough to sustain a constitutional violation. *See Moore,* 255 F.3d at 545.

Instead, to defeat summary judgment, Clay must have *evidence* that Defendants acted "callously" and with "reckless disregard." *Meuir*, 487 F.3d at 1118 (explaining that a prisoner "must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded" his need for medical care). *Clay has not presented any such evidence.*[8]

The proof also fails to demonstrate any physical injury caused by Defendants' alleged deliberate indifference. Despite Clay's lack of cooperation, by refusing to take Humulin R and skipping meals, Defendants continued to make adjustments to his insulin regimen in an effort to reduce his A1c, which was 10.2 when he transferred to the EARU in February of 2015. As a result, after spiking to 12.2 in May of 2015, Clay's A1c levels returned to the 10's by July and remained there through the remainder of 2015.

---

[8] Instead, the evidence establishes that, because Clay disagreed with the opinions of his treating physicians and other trained medical professionals, *he* made the decision not to take the offered injections of Humulin R and also attempted to control his diabetes by reducing his food intake. Clay made these decisions voluntarily and knowingly in direct defiance of his physician's orders and the best efforts of medical professionals to explain to Clay that Humulin R was not the cause of his perceived side effects, and that Humulin R and Novolin R was the identical insulin marketed under different brand names.

### III. Conclusion

For all of the foregoing reasons, the Court concludes that Defendants are entitled to summary judgment on Clay's inadequate medical care claim.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment *(Doc. 74)* is GRANTED.

2. Plaintiff Clay's inadequate medical care claims against Correct Care Solutions, LLC; Amy L. Rowland; APRN Aric Wade Simmons; Dr. Brett Butler; and Nursing Director Tammy Lynn Kimble are DISMISSED, WITH PREJUDICE.

Dated this <u>19th</u> day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE